**Opinion issued June 7, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-15-00032-CR**

**NO. 01-15-00033-CR**

———————————

**JOE EDDIE ALEJANDRO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 410th District Court**
**Montgomery County, Texas***
**Trial Court Case No. 12-05-05610-CR (Count 2)**
**Trial Court Case No. 12-05-05610-CR (Count 3)**

---

\* The Supreme Court of Texas transferred this appeal from the Court of Appeals for the Ninth District of Texas. *See* TEX. GOV'T CODE § 73.001 (authorizing transfer of cases). We are unaware of any conflict between precedent of the Court of Appeals for the Ninth District and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

**MEMORANDUM OPINION**

In separate verdicts, a jury found Joe Eddie Alejandro guilty of aggravated sexual assault of a child and indecency with a child by sexual contact. It assessed his punishment at 30 and 10 years' confinement, respectively, with the sentences to run concurrently. The trial court entered separate judgments of conviction in accord with the jury's verdicts and assessed attorney's fees against Alejandro in the amount of $3,100.

Alejandro contends that he is entitled to a new trial because there is a reasonable likelihood that false material testimony affected the jury's guilty verdicts or its assessment of punishment. He also contends that the judgment must be modified to delete the assessment of attorney's fees, because the trial court found that he was indigent and the record does not show a subsequent material change in his finances.

We modify the judgments of conviction to delete the attorney's fees assessed against Alejandro, and affirm the judgments as modified.

**Background**

A grand jury indicted Alejandro for three offenses—continuous sexual abuse of a child, aggravated sexual assault of a child, and indecency with a child by sexual contact. *See* TEX. PENAL CODE §§ 21.02(b), 22.021(a)(1)(B), 21.11(a)(1). The charges all concerned the same child, his daughter.

Alejandro applied for the appointment of counsel on the basis that he was indigent. He supported his application with an affidavit attesting to his financial inability to pay a lawyer. The trial court appointed a lawyer for his defense.

Alejandro pleaded not guilty to all of the charges. The three offenses charged were tried to a jury, which heard conflicting evidence about the duration of the alleged sexual abuse.

As part of the investigation of the complainant's allegations, she underwent an examination by a sexual assault nurse examiner. This examination was conducted by Ashley Huynh, R.N., who testified at trial. During the examination Huynh obtained a history of the alleged abuse from the complainant. Huynh documented this history in a medical chart, which was admitted into evidence without objection. In the chart, Huynh recorded that the complainant told her that Alejandro sexually abused her every day from the age of six through the age of nine. Huynh testified that the chart reflected what the complainant had told her during the examination.

But the complainant's mother subsequently offered contrary testimony about the duration of the sexual abuse. On her account, the sexual abuse could have continued for no more than a year or so, because Alejandro only had contact with the complainant for this more limited period of time. She testified that the complainant lived with Alejandro during a portion of the years 2005 and 2006. She stated that the complainant stayed with him for about nine months to a year or so,

3

and that the complainant returned to live with her in 2006 or possibly 2007. And she testified that she did not permit Alejandro to see the complainant afterward. During cross-examination, defense counsel questioned her about the history recorded in Huynh's chart in order to highlight the inconsistency between Huynh's chart and the mother's testimony. The complainant's mother ultimately agreed that the duration stated in the chart was inaccurate.

The complainant's testimony also contradicted Huynh's chart. The complainant's own recollection about when she began and ceased living with Alejandro was unclear. But she testified that she lived with Alejandro for one year, and that the sexual abuse began about a month after she began living with him and continued until she left. Contrary to Huynh's chart, the complainant testified that the abuse occurred only during the week and not on weekends. Consistent with her mother's testimony, the complainant further testified that the sexual abuse occurred only during the period in which she lived with Alejandro and that she never saw Alejandro between the time she stopped living with him and the beginning of the trial. When questioned about Huynh's examination, she testified that she did not recall it. Nor did she recall telling Huynh that the abuse had continued from the time she was six through the age of nine. But she agreed that it was not true that Alejandro abused her for several years.

After the close of the evidence, the trial court granted the State's motion to dismiss the first count of the indictment charging Alejandro with continuous sexual abuse of a child. In her closing argument to the jury, the prosecutor explained that the State had dismissed this charge because the statute creating the offense of continuous sexual abuse of a child had not been enacted until September 2007, and the evidence established that Alejandro did not have any contact with the child after the statute's enactment. She also argued that the child's contradictory representations to Huynh and the jury about the duration of the sexual abuse resulted from her young age.

In his closing argument, Alejandro's counsel argued that the State's dismissal of the charge for continuous sexual abuse of a child undermined the complainant's credibility. He argued that the State had relied on the complainant's unreliable statement to Huynh that the abuse had continued over the course of several years in bringing this charge but was constrained to abandon it when the complainant and her mother testified otherwise. Defense counsel maintained that the State's own evidence, therefore, showed the complainant was not credible and that the proof regarding the remaining two charges was equally unreliable.

After the jury found Alejandro guilty of both aggravated sexual assault of a child and indecency with a child by sexual contact, the jury assessed his punishment for aggravated sexual assault of a child at 30 years' confinement. The jury assessed

his punishment for indecency with a child by sexual contact at 10 years' confinement. The trial court entered judgments on the jury's verdicts and, without specifying the basis, assessed $3,100 in attorney's fees.

The trial court later appointed counsel to represent Alejandro on appeal.

## Discussion

### A. False Material Testimony

Alejandro contends that the State violated his constitutional right to due process by introducing false material evidence at trial. Specifically, Alejandro argues that Huynh's chart and testimony falsely informed the jury that he sexually abused the complainant every day during the period in which she was between six and nine years of age, but that the testimony of the complainant and her mother established that Alejandro had no contact with the victim during much of this period. He further contends that there is a reasonable likelihood that the false evidence Huynh sponsored affected the judgment of the jury. On this basis, Alejandro maintains he is entitled to a new trial.

The State agrees that Huynh's chart and testimony imparted inaccurate information to the jury, but disagrees that this inaccuracy renders the evidence false. The State argues that Huynh merely testified as to what the complainant told her and that there is no proof that Huynh's chart or testimony, as opposed to the complainant's recollection at the time of the examination, was false. Moreover, the

6

State argues, this inaccuracy could not have left a false impression with the jury, because the complainant and her mother testified to the correct length of the complainant's stay with Alejandro. The State also contends that Huynh's chart amounted to a prior inconsistent statement by the complainant and, therefore, could have only detracted from her credibility. Thus, the State argues, the inaccurate information could not have affected the judgment of the jury in a manner adverse to Alejandro.

### 1. Applicable Law

The State's procurement of a conviction or punishment by the use of false material testimony violates a defendant's constitutional right to due process. *Ex parte Ghahremani*, 332 S.W.3d 470, 477 (Tex. Crim. App. 2011). When a defendant asserts this violation on appeal, we review the record to determine whether the State used false testimony and whether the testimony was material. *Yates v. State*, 171 S.W.3d 215, 220–22 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).

Testimony is false if it is untrue; the falsehood need not be intentional, result from the witness's bad faith, or constitute perjury. *Ex parte Weinstein*, 421 S.W.3d 656, 665–66 (Tex. Crim. App. 2014); *Ex parte Chavez*, 371 S.W.3d 200, 208 (Tex. Crim. App. 2012). So witness testimony may be false even when its falsity is unintentional. *E.g.*, *Estrada v. State*, 313 S.W.3d 274, 287 (Tex. Crim. App. 2010). But mere inconsistencies or conflicts in the evidence do not establish falsity. *Ex*

*parte De La Cruz*, 466 S.W.3d 855, 870–71 (Tex. Crim. App. 2015), *cert. denied*, 136 S. Ct. 1175 (2016) (Mem.); *Alexander v. State*, 282 S.W.3d 701, 711 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). The salient question is whether the particular testimony at issue provides a misleading impression of the facts to the jury when taken as whole. *Ex parte Weinstein*, 421 S.W.3d at 666; *Ex parte Chavez*, 371 S.W.3d at 208.

False testimony is material if there is a reasonable likelihood that it affected the jury's guilty verdict or its assessment of punishment. *Ex parte Weinstein*, 421 S.W.3d at 665; *Ex parte Chavez*, 371 S.W.3d at 208. This reasonable likelihood standard is the equivalent of the standard for constitutional error, which requires the State to prove beyond a reasonable doubt that the error did not contribute to the conviction or punishment. *Ex parte Ghahremani*, 332 S.W.3d at 478. We consider the entire record in assessing the materiality of false testimony. *Ex parte Chavez*, 371 S.W.3d at 209–10. Notably, if the jury is made aware of the falsity of the testimony before its deliberations and could have rendered the verdict it did even if it discounted that testimony as false, the false testimony is not material. *See Ex parte De La Cruz*, 466 S.W.3d at 871; *Alexander*, 282 S.W.3d at 711.

### 2. Analysis

It is undisputed that Huynh's chart and testimony regarding the duration of the alleged sexual abuse were inaccurate. The complainant and her mother

8

contradicted Huynh regarding the duration of the sexual abuse. However, no evidence suggests that the complainant did not in fact tell Huynh what Huynh wrote down—that she had been sexually abused every day from the age of six through the age of nine. The complainant testified that she did not recall having said this to Huynh, but she did not deny doing so. Accordingly, it is not clear that Huynh's chart and testimony should be regarded as "false" when they are based on a young child's inaccurate recollection of events. *See Alexander*, 282 S.W.3d at 711 (conviction is not secured with false testimony where jury is informed of conflict in evidence before it returns its verdict).

However, assuming without deciding that Huynh's inaccurate chart and testimony qualify as "false," Alejandro would not be entitled to reversal because this evidence was not material. The jury heard the complainant and her mother testify that Huynh's chart and testimony were inaccurate with respect to the duration of the alleged sexual abuse. The prosecutor conceded that the duration of the abuse reported by Huynh was inaccurate, arguing in closing that the complainant's contradictory statements about the duration were attributable to her youth. And the defense argued in closing that the complainant's inconsistent statements about the duration of the sexual abuse damaged her credibility and established reasonable doubt. In other words, the defense argued that Huynh's report and testimony were inaccurate, because the complainant was untruthful and, therefore, unworthy of

9

belief. When the falsity of proof is put before the jury for its evaluation, and it could have rendered the verdict it did even if it discounted that proof as false, the testimony is not material. *See Ex parte De La Cruz*, 466 S.W.3d at 871; *Alexander*, 282 S.W.3d at 711. Here, the jury could have believed that Huynh's chart and testimony were false with respect to the duration of alleged sexual abuse and nonetheless rendered the verdicts it did based on other proof in the record, including the complainant's and her mother's testimony.

In sum, the record does not support Alejandro's contention that there is a reasonable likelihood that the inaccuracy of Huynh's chart and testimony affected the jury's guilty verdict or its assessment of punishment. We therefore hold that the State did not violate Alejandro's due process rights by procuring his conviction or punishment by the use of false material testimony.

### B. Attorney's Fees

Alejandro contends that the trial court erred in assessing $3,100 in attorney's fees against him. He argues that the trial court found him to be indigent and that there is no evidence in the record indicating a change in his financial circumstances. Accordingly, Alejandro requests that we modify the judgments to delete the assessment of attorney's fees. The State concedes the error and likewise requests this modification.

### 1. Applicable Law

The State's confession of error is entitled to significant consideration, but it is not binding on the court. *Estrada*, 313 S.W.3d at 286. We must examine the merits of any claim of error even when the parties are in agreement. *Id.*

An indigent criminal defendant generally is entitled to the appointment of counsel. TEX. CODE CRIM. PROC. art. 1.051(b)–(d). Once the court finds that a defendant is indigent, he is presumed to remain so for the duration of the proceedings absent a material change in financial circumstances. TEX. CODE CRIM. PROC. art. 26.04(p). If the trial court subsequently finds that the defendant has the financial resources to pay in whole or part for legal services, it may order him to do so. TEX. CODE CRIM. PROC. art. 26.05(g); *Mayer v. State*, 309 S.W.3d 552, 553 (Tex. Crim. App. 2010). But this finding must enjoy support in the record. *See Mayer*, 309 S.W.3d at 553–57.

### 2. Analysis

The trial court found that Alejandro was indigent and appointed trial counsel. The record does not indicate that the trial court subsequently found a material change in Alejandro's finances. Indeed, the trial court later agreed that Alejandro was entitled to the appointment of appellate counsel on the basis of indigence. The limited proof in the record concerning his ability to pay supports Alejandro's claims of indigence. There is no contrary evidence. We therefore modify the judgments to

11

delete the assessment of attorney's fees, because the presumption of continued indigence is not rebutted by any evidence in the record.

## Conclusion

We modify the judgments of conviction to delete the attorney's fees assessed against Alejandro, and affirm the trial court's judgments as modified.


Rebeca Huddle
Justice

Panel consists of Justices Jennings, Massengale, and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).